IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
MAY 21, 2003 Session

## GWENDOLYN JACKSON, ET AL. v. ZODIE HAMILTON, ET AL.

**Direct Appeal from the Circuit Court for Shelby County**
**No. 44531 T.D.      Rita L. Stotts, Judge**

_____

**No. W2000-01992-COA-R3-CV - Filed November 4, 2003**

_____

This action arises out of an automobile accident, and Plaintiffs' claimed damages of lost wages, loss of consortium, medical expenses, and pain and suffering. The case was tried before a jury, who found in favor of the Plaintiffs and awarded one of the Plaintiffs $600. Plaintiffs appeal the verdict, and this Court reverses and remands the case for a new trial.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S, and HOLLY M. KIRBY, J., joined.

Stanley H. Less, Memphis, TN, for Appellants

John D. Richardson, Teresa A. Boyd, Memphis, TN, for Appellees

**OPINION**

**Facts and Procedural History**

On the morning of March 4, 1991, in Shelby County, Tennessee, Gwendolyn Jackson ("Jackson") stopped at a stop sign, when Zodie Hamilton ("Hamilton"), who was behind Jackson, became distracted by her children in her car resulting in a minor impact of Hamilton's car with Jackson's car. Officer Goforth of the Shelby County Sheriff's Department investigated the accident at the scene and testified that Jackson told him she was not hurt even though she was wincing in pain. After the accident, Jackson did not go to work and obtained a name of a chiropractor, Dr. Rush Robinson ("Robinson"), from a co-worker.

Jackson saw Robinson the day of the accident in the early afternoon and, initially, she had no complaints, though she appeared to be in pain. Robinson performed no spinal adjustments at that

appointment, but, instead, provided Jackson with cold packs, a neck collar, and ordered x-rays. After Jackson had the x-rays, she returned home and began to experience pain in her shoulders and back with a tingling feeling in her fingers. On March 5, 1991, Robinson again saw Jackson, who complained of neck pain and stiffness, but he still did not perform a spinal adjustment. Robinson saw Jackson again on March 6, 1991, and it was at this appointment that Robinson performed a spinal adjustment on Jackson's neck. Though Jackson testified that she experienced an immediate decrease in pain overall, she noticed a numbness in her left hand a couple of weeks after the car accident. Because Robinson was concerned about Jackson's left arm pain, he referred her to a neurosurgeon, Dr. Thomas Miller ("Miller"), on March 22, 1991. Miller, after seeing Jackson on March 25, 1991, ordered an MRI and, upon review, determined that she had a soft disc rupture, which required surgery. Jackson underwent cervical laminectomy with diskectomy with a foraminotomy by Miller on May 10, 1991. Though Jackson remained under Miller's care for the next year, she continued to experience pain in her left shoulder and arm. Because her condition was not improving, Jackson decided to begin seeing Dr. Moacir Schnapp ("Schnapp"), a pain doctor. Jackson experienced an adverse reaction to one of the medications, Tegretol, prescribed by Schnapp resulting in emergency room treatment for severe headaches.

Plaintiff incurred medical expenses for her treatment in excess of $18,000. In addition, Plaintiff was absent from work from March 4, 1991, through March 25, 1991, and from May 10, 1991, through September 3, 1991. Plaintiff's monthly rate of pay at that time was $3,061.67.

Gwendolyn Jackson and Charles Jackson (collectively the "Plaintiffs") filed their complaint against Zodie Hamilton and James Hamilton (collectively the "Defendants") in the Circuit Court for Shelby County, Tennessee, on March 2, 1992, alleging damages in the form of pain and suffering, loss of consortium, lost wages, and medical expenses. Defendants filed their answer on April 9, 1992, admitting that the car accident occurred but denying their negligence or that their negligence proximately caused the damages Plaintiff suffered. Defendants moved to amend their answer to add the affirmative defense of Robinson's comparative fault but the trial court denied this amendment. A trial on this cause of action was held in September 1995 where the trial judge directed a verdict in favor of Plaintiffs and sent the issue of damages to the jury, which was unable to agree on a verdict, causing a mistrial. In the second trial of December 1996, the jury entered a verdict in favor of the Plaintiffs awarding Gwendolyn Jackson $8,877.14 and Charles Jackson one dollar. Upon Plaintiffs' motion for a new trial, the December 1996 verdict was set aside by the trial judge, acting as the thirteenth juror, and a new trial was ordered. After a third trial in June 2000, the jury entered a verdict for Plaintiffs awarding Gwendolyn Jackson $600 and Charles Jackson nothing. Plaintiffs filed a motion for a new trial, which was denied by the Honorable Rita Stotts, and timely appealed to this Court presenting the following issues for our review:

I.      Whether the trial court failed to properly discharge its duty as thirteenth juror by deferring to the jury verdict rather than independently weighing the evidence;

II.     Whether the trial court erred in allowing the admission of hypothetical questions unsupported by the evidence and which mischaracterize the evidence propounded to Dr. Schnapp;

III.    Whether the trial court erred in refusing to charge the jury on the law of medical complications from treatment of injuries inflicted by the original tortfeasors;

IV.    Whether the trial court erred in denying Plaintiffs' motion for directed verdict; and

V.    Whether the trial court erred in allowing Defendants to argue the Plaintiff Gwendolyn Jackson suffered from thoracic outlet syndrome.

Defendants/Appellees also raise for our review:

VI.    Whether material and sufficient evidence exists to support the jury's verdict; and

VII.    If this Court should reverse and remand the case for a new trial, Defendants should be allowed to amend their answer to allege the treatment by the chiropractor caused the Plaintiff Gwendolyn Jackson's ruptured disc.

For the following reasons, this Court reverses and remands this case for a new trial.

**Standard of Review**

"Findings of fact by a jury in civil actions shall be set aside only if there is no material evidence to support the verdict." Tenn. R. App. Proc. 13(d). In addition, our review is generally limited only to those issues presented by the parties. Tenn. R. App. Proc. 13(b). Finally, a judgment shall not be set aside by this Court unless, after considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process. Tenn. R. App. Proc. 36(b).

**Hypothetical Questions**

Plaintiffs argue that the trial court erred by allowing certain portions of Dr. Schnapp's deposition to be read into evidence. To resolve this issue, this Court need not search the entire record to determine whether every possible fact was listed in the hypothetical question nor should this Court test the hypothetical question solely against the evidence presented by the opposing party. *Pentecost v. Anchor Wire Corp.*, 662 S.W.2d 327, 328-29 (Tenn. 1983). "Rather, the issue should be resolved by determining whether the question contained enough facts, supported by the evidence, to permit an expert to give a reasonable opinion which is not based on mere speculation or conjecture and which is not misleading to a trier of fact." *Id.* at 329. When the evidence assumed in a hypothetical is conflicting, as it is in this case, counsel asking the question is permitted to include as an assumed fact his version of the evidence. *Tolliver v. Tripp*, 1990 Tenn. LEXIS 336, at *8 (Tenn. 1990).

Plaintiff first asserts the trial court erred when it admitted the following portion of the Schnapp deposition:

Q.    Well, she is under oath with us, and she told us that she did not hurt her neck in this accident. Is that significant to you?

Mr. Less: I'm going to object to that question. I've never seen that in any of the records, and I'll object because of that reason.

Q. (By Mr. Richardson) Is that significant to you?

A. That is significant as to the testimony I have given as to the causation of her pain. If she had neck pain prior to the accident, if those complaints were already present prior to that then I'll have to change my testimony.

The hypothetical question assumes that Plaintiff Gwendolyn Jackson stated she did not hurt her neck in the accident and that she had prior complaints of neck pain which is supported by the testimony and exhibits in the record. Therefore, this portion of the deposition was properly admitted.

Plaintiff next argues the trial court erred by admitting the following portion of the same deposition:

Q. Assume that that did not start until two weeks after the wreck. Assume that she didn't hurt at the accident scene. Assume that she told the police she wasn't hurting. Assume that she wasn't hurting when she left the scene. Assume that she wasn't hurting when the employee referred her and took her over to the chiropractor. Assume that she wasn't hurting when she went into the chiropractor's office. Assume that she wasn't hurting when she began the manipulations in her neck and in her back by the chiropractor. Assume that her neck did not even hurt when she was being treated by the chiropractor, but he gave her manipulations anyway and that approximately two weeks after she began treatment by the chiropractor she then developed the numbness in her left arm.

Now, making those assumptions to be true, doesn't that argue that the wreck didn't cause the problem?

A. I would think that immediately after a car accident some patients don't have maximal pain, but I would expect the pain to develop within the first twenty-four to thirty-six hours. Sometimes they because of the stress cannot tell the pain. I would certainly not expect this to develop from the car wreck only two weeks after the accident.

The hypothetical question in this passage makes a number of assumptions, and, though the facts assumed in this question are disputed by the parties, there is testimony and evidence to support the facts assumed in this question. Therefore, the trial court properly admitted this portion of Dr. Schnapp's deposition.

Finally, Plaintiffs object to another portion of Dr. Schnapp's deposition. In this portion, the question refers to assumptions made in another portion of the same deposition which was excluded by the trial court. The portion excluded reads as follows:

Q.     Let me add some more things. You've already told us that you may have to change your testimony. I'm going to add some more things and see if it might even persuade you more, okay?

Assume that she did not hit anything inside the car. Assume that it was a minor impact with little or no damage to the cars. And I can show you photographs if you would like of both cars, and there is no damage to either. It was a bump. And that when she went to the chiropractor she was not even hurting, that a friend of hers suggested that she go to the chiropractor regardless of whether she was hurting and that when she went to the chiropractor she was not having any pain in her neck. She was not hurting in her neck. She was not hurting at all. She had only been dazed simply because she had been involved in a wreck and was upset and that after treatments by the chiropractor she developed pain in her arm. She developed pain in her neck and that her paraesthesia and numbness in her arm began two weeks after the treatment by the chiropractor, that is manipulated on her neck even though she wasn't having neck problems. He manipulated on her back and other areas of her body and that she began experiencing all of this numbness, symptoms that would be attributable to a disc after she began the manipulations by the chiropractor.

Now, assuming that to be true–and that will be what the jury has to decide in this case–assuming that to be true, does that not cast great doubt–a shadow over the causation in this case?

A.     Of course, it does.

The trial court, despite excluding this portion, permitted the following portion, which directly follows the passage above, to be admitted:

Q.     Were you aware of any of that information that I just gave you?
A.     No.
Q.     It's not anywhere in your records?
A.     Not at all.
Q.     Doctor, assuming those things to be true, doesn't that argue that more likely than not her problems are not due to this car wreck?
A.     If she did not have pain at all after the car wreck, if she did not develop that pain for several weeks after the car wreck it is possible that this was not caused by the car wreck.
Q.     Let's be more specific so that we make sure that we're square on the facts. The numbness that she developed and you saw on the records there–didn't you see some complaints of numbness?
A.     Yes.

Again, just as there was evidence to support the assumptions of the previous two hypothetical questions, this Court has also found evidence in the form of testimony and exhibits to support the

assumptions of the hypothetical which was excluded by the trial court. The hypothetical which recalls those same assumptions was properly admitted by the trial court. Therefore, the trial court, as an evidentiary matter, did not err when it admitted these portions of Dr. Schnapp's deposition into evidence.

### The Jury Charge of the Trial Court

Plaintiffs argue that the trial court judge erred in refusing to include within the jury instruction a statement of the common law rule that "[if] one is injured by the negligence of another, and these injuries are aggravated by medical treatment (either prudent or negligent), the negligence of the wrongdoer causing the original injury is regarded as the proximate cause of the damage subsequently flowing from the medical treatment."[1] *Atkinson*, 1994 Tenn. App. LEXIS 480, at *4 (quoting *Transports, Inc. v. Perry*, 414 S.W.2d 1 (Tenn. 1967)). "The rationale for this rule is that the tortfeasor whose negligence caused the injured party to require medical attention should bear all the foreseeable risks resulting from the injury, including risks derived from the medical provider's human fallibility." *Id*. at *5. Defendants argue that, given the holding of the Tennessee Supreme Court in *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992), the common law rule holding the original tortfeasor liable for the subsequent negligence of the treating physician is no longer the rule in Tennessee. However, the common law rule, since the *McIntyre* decision, has been upheld in the Middle and Eastern Sections of this Court. *Atkinson v. Hemphill*, 1994 Tenn. App. LEXIS 480 (Tenn. Ct. App. 1994); *Troy v. Herndon*, 1998 Tenn. App. LEXIS 793 (Tenn. Ct. App. 1998). We are in accord with the other Sections and find the reasoning of the *Atkinson* court persuasive:

> The problem for this court is to harmonize this useful common law rule with the Supreme Court's directive, relied upon by the defendant in his Motion to Amend his Answer:
>
> > ". . . fairness and efficiency require that defendants called upon to answer allegations in negligence be permitted to allege, as an affirmative defense, that a nonparty caused or contributed to the injury or damage for which recovery is sought. In cases where such a defense is raised, the trial court shall instruct the jury to assign the nonparty the percentage of the total negligence for which he is responsible." *McIntyre v. Balentine*, 833 S.W.2d 52 at 58.
>
> The Supreme Court established this procedure to encourage the resolution of all claims in a single proceeding, where liability may be apportioned in accordance

---

[1]  Specifically, Plaintiffs requested the following instruction:

If you find that the Plaintiff, Gwendolyn Jackson, suffered an injury as a proximate result of the car accident, and her injury was aggravated by medical treatment, the negligence of Zodie Hamilton causing the original injury is regarded as the proximate cause of the damage subsequently flowing from the medical treatment.

-6-

with fault. However, to allow a tortfeasor to reduce his damages by alleging the subsequent negligence of a medical provider would for all practical purposes abolish the common law rule discussed above. We do not believe that the Supreme Court intended this result.

The Court acted in *McIntyre v. Balentine* to eliminate the harsh rule that a plaintiff's contributory negligence completely bars his recovery, and to establish a system of comparative fault that more equitably allocates liability between negligent actors. The effect of eliminating the rule now at issue would be to penalize injured parties in several inequitable ways.

Abolition of the common law rule would effectively shift the burden of proving medical negligence (or its absence) from the defendant to the plaintiff. To protect themselves, plaintiffs in future cases would feel compelled to timely name medical providers as defendants in any suit where the negligence of the original tortfeasor led to the necessity for medical care, whether or not medical negligence was actually suspected. In cases like the present one, where this was not done, and the one year statute of limitations for filing medical malpractice claims passed, allowing the defendant to allege medical negligence as an affirmative defense would unfairly prejudice the plaintiff's right to a full recovery for her injuries.

*Atkinson*, 1994 Tenn. App. LEXIS 480, at *6-7. Because we uphold the common law rule of the original tortfeasor's liability for subsequent medical complications, we find that the trial court committed prejudicial error when it refused to instruct the jury on this rule of law. In light of the disposition of this issue, the only other issue this Court needs to address is issue seven above.

**Amending Defendant's Answer**

Defendants assert that, if this Court should remand this appeal for a new trial, Defendants should be permitted to amend their answer to include the affirmative defense of the comparative fault of Dr. Robinson, the Plaintiff's chiropractor. We find, as the *Atkinson* and *Troy* courts did, that such an amendment would be inconsistent with the common law rule of holding the original tortfeasor liable for subsequent medical treatment. Though, at first glance, this may seem a harsh result for a defendant, as the Court in *Atkinson* noted, such defendant could have the alternatives of impleading a third party to the original suit or suing the medical provider under a theory of subrogation. *Id*. at *5. Therefore, we deny Defendants relief to amend their answer.

**Conclusion**

For the foregoing reasons, we reverse the decision below and remand this case for a new trial. Costs are judged against Appellees, Zodie Hamilton and James Hamilton, for which execution may issue, if necessary.

_____
ALAN E. HIGHERS, JUDGE